## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### October 4, 1918.

## THE PEOPLE v. SOLOMON MONTLAKE, alias SOLOMON SCHMOOFELD, Impleaded with MAX ROSENFELD.

### (184 App. Div. 578.)

(1.) GRAND LARCENY IN FIRST DEGREE—DISMISSAL OF JURY DURING TRIAL.

A trial judge may at any time during the trial discharge the jury and a new trial may thereafter be had when, in his opinion, some substantial reason has arisen during the course of the trial making that course necessary. If the jury has been so discharged for an inadequate reason and without the consent of the defendant, the remedy is not by *habeas corpus,* but by plea of former jeopardy interposed at the new trial.

(2.) SAME—DISMISSAL OF JURY AFTER CASE HAS BEEN SUBMITTED—REMEDY OF DEFENDANT.

But after a case has been submitted, the judge can discharge the jury only in one or the other of the instances specified in section 428 of the Code of Criminal Procedure, and in that case the defendant may resort for remedy either to *habeas corpus* or to the plea of former jeopardy.

(3.) SAME—MISCONDUCT OF PROSECUTING ATTORNEY AUTHORIZING DISMISSAL OF JURY DURING TRIAL.

Where upon the trial of a defendant for the crime of grand larceny the prosecuting attorney accused the defendant's counsel in the presence of the jury of being a criminal, and the latter's motion to have a juror withdrawn was denied, and upon a second instance of such conduct the defendant's counsel protested but made no motion, and upon a third accusation, the court, on its own motion, declared that he would withdraw a juror, his dismissal of the jury was a proper exercise of his reasonable discretion under the circumstances.

(4.) SAME—CROSS-EXAMINATION TENDING TO SHOW MORAL TURPITUDE OF WITNESS—NON-PAYMENT OF RENT.

Upon the cross-examination of one of defendant's leading witnesses in support of his claimed alibi, it was an unwise exercise of discretion to

permit said witness to be interrogated as to the fact that he had not paid his rent at the time the alleged crime was committed, as such fact being in no way conected with the case or the parties interested therein, did not tend to show moral turpitude on the part of the witness.

(5.) SAME.

A cross-examination of a witness for such purpose should be limited to matters which have some fair tendency to show moral turpitude.

(6.) SAME—ALIBI.

It was reversible error for the court to charge that the jury could not acquit by reason of the alibi evidence unless it established ''that the defendants could not have been at the place where the crime is alleged to have been committed'' at the time when it was committed, as such test required the proof to exclude a bare possibility of their presence.

(7.) SAME—BURDEN OF PROOF.

Such spcific charge was not controlled and modified by general statements that the burden of proof was upon the People to establish defendant's guilt beyond a reasonable doubt.

(8.) SAME.

The burden of proof as to the alibi was not upon the defendant. If the proof in connection with all of the other proof raised a reasonable doubt as to the presence of the defendant at the place of the crime, he was entitled to an acquittal.

REARGUMENT of an appeal by the defendant, Solomon Montlake, from a judgment of the Supreme Court, Kings county, rendered against him on the 30th day of September, 1916, convicting him of the crime of grand larceny in the first degree.

*Otho S. Bowling* (*Robert H. Elder* with him on the brief), for the appellant.

*Harry G. Anderson, Assistant District Attorney* (*Harry E. Lewis, District Attorney*, with him on the brief), for the respondent.

MILLS, J.:

This is an appeal by the defendant Montlake from a judgment of conviction of the crime of grand larceny in the first

degree, rendered at the Trial Term of the Supreme Court of Kings county on the 4th of October, 1916, by which each defendant was sentenced to imprisonment in the State prison at Sing Sing, under an indeterminate sentence, the maximum thereof being ten years and the minimum five.

The indictment was found in the Kings County Court, and a trial was attempted there before one of the county judges and a jury in August, 1916. That attempted trial resulted in the trial judge dismissing the jury at the end of the case for the prosecution. Thereafter, by an order made by the said court, the indictment was transferred to the Supreme Court. At the opening of the trial in the latter court, the defendants interposed a plea of former jeopardy in that said dismissal of the jury upon said former attempted trial was equivalent in law to their acquittal and a bar to their further trial. The minutes of such former attempted trial were put in evidence in behalf of the defendants. Both counsel conceded that such evidence and plea raised merely a question of law to be decided by the court, and the presiding justice overruled the plea and denied the motion based thereon to direct an acquittal, defendants excepting. The verdict as to each defendant was guilty, and the sentence as to each was pronounced as above stated. Both defendants appealed here, but the appeal of the defendant Rosenfeld was dismissed at our last April term. Between the said two trials these defendants, upon the authority of People ex rel. Stabile v. Warden, etc. (202 N. Y. 138), attempted by writ of habeas corpus to obtain their discharge from detention in jail to await trial. That matter was heard at Special Term and decided against the defendants and the writ.

The main contention of the appellant's counsel here is that the plea of former jeopardy was established by the record of said former attempted trial, and that, therefore, the learned trial justice erred in refusing defendants' motion thereon to direct a verdict of acquittal.

The law in this State upon the point thus presented seems to be settled as follows:

(a) Where the jury was dismissed during the trial, but before the case had been finally submitted to it.

In that instance the judge may at any time discharge the jury and a new trial may thereafter be had when, in his opinion, some substantial reason has arisen during the course of the trial making that course necessary in the interests of justice. (People v. Olcott, 2 Johns. Cas. 301; People v. Goodwin, 18 Johns. 187.)

If the jury has been so discharged for an inadequate reason and without the consent of the defendant, the remedy of the defendant is not by habeas corpus but by plea of former jeopardy interposed at the new trial. (People ex rel. Herbert v. Hanley, 142 App. Div. 421, 423.)

(b) After the case has been submitted to the jury.

In that situation the judge can discharge the jury only in one or the other of the instances specified in section 428 of the Code of Criminal Procedure, and in that case the defendant may resort for remedy either to habeas corpus or to the plea of former jeopardy. (People ex rel. Stabile v. Warden, etc., 67 Misc. Rep. 202; 139 App. Div. 488; 202 N. Y. 138.)

Upon the perhaps previously somewhat vexed question of the extent of the jurisdiction of the judge in such a case to discharge the jury for such a cause, the opinion of the Court of Appeals in the Stabile Case (*supra*) placed its decision that he had no such jurisdiction, except as expressly given by that statute, upon the ground that that statute was " intended to take away the unqualified discretion that had theretofore existed in the courts in regard to discharging a jury and make the discretion of the courts dependent upon a prior declaration by the jury of their ability or inability to agree." (202 N. Y. 150.) That declaration was so applicable, however,

only to the situation defined in that statute, viz., a discharge after the jury had taken the case. As to their discharge after the commencement of the trial and before the case has been submitted to them, we have no statute defining the limitation of the exercise of that discretion. As to that situation we have only section 420 of the Code of Criminal Procedure, which provides that when the jury has been discharged or prevented from giving a verdict " by reason of an accident or other cause,    *    *    *    during the progress of the trial, *    *    *    the cause ·may be again tried at the same or another term."

In the instant case I think that the situation at the former attempted trial was such as to authorize the trial judge, in the exercise of ·a ˙reasonable discretion, to discharge the jury, at least if the defendants did not object. The repeated conduct of the assistant district attorney prosecuting the case at that trial, in calling the defendants' trial counsel, in the presence of the jury, the attorney of the pickpocket trust and even a pickpocket himself, made it reasonably necessary, in the interests of justice, that the jury should be discharged. In addition, I think that the record indicates substantially that such action was taken by the trial court with appellant's consent and indeed at the request of his counsel. Upon the first occasion of such conduct by the assistant district attorney, defendants' counsel moved that a juror be withdrawn, but the presiding judge denied the motion, defendants excepting. Up-- on the second occasion of such conduct defendants' counsel con-- tented himself with what amounted to a protest, but made no such motion. At the third and final occasion of that conduct, which was the most flagrant of all, the court on his own motion declared that he would withdraw a juror. I think that his action may well be regarded as a somewhat belated granting of defendants' said former motion for that relief. Defendants' exception to the denial of that motion still stood upon the record,.

and I think that defendants' counsel should then in clear terms have withdrawn that motion if he did not wish it granted. That counsel here claims that he did in effect do that by his declaration, " I want the jury to hear it; " but it is manifest that by those words he then referred to his proposed personal answer to the attack of the assistant district attorney upon his own character. I am sensible that in the Stabile Case (*supra*) it was held that the mere silence of the defendant's counsel and his failure to object to the discharge was not to be deemed the consent of the defendant thereto (139 App. Div. 493) ; but in that case there had been no motion by defendant to withdraw a juror, as there had been in the instant case. No doubt the defendant had the right at any time to withdraw that motion, but he made no express effort to do that. (People v. McGrath, 202 N. Y. 445.)

The appellant's counsel further contends that the learned trial justice erred to the substantial prejudice of the defendants in permitting a certain line of cross-examination of one of the defendants' leading witnesses in support of his claimed alibi. Such cross-examination culminated in showing that the witness, the keeper of the restaurant at which it was claimed, in behalf of the defendants, they were at the time when the crime is alleged to have been committed, did not pay the rent of the restaurant, but moved out and left it unpaid, such inquiry being permitted over the objection and exception of defendants' counsel and eliciting the fact that the rent was left unpaid. I think that it was an unwise exercise of discretion to permit the witness to be so interrogated. The fact that he had not paid a certain debt, which was no way connected with the case on trial or the parties interested therein, did not in my judgment tend to show moral turpitude on the part of the witness, so as to fairly warrant his disparagement as a witness. A cross-examination for that purpose should, as we have frequently held, be limited to matters which have some fair tendency to

show moral turpitude. I suspect that it would be a very hard rule to invoke or apply in these times that the mere fact that one has not paid a certain debt may be regarded by the jury as an impeachment of his credibility as a witness. If the case here upon the merits was otherwise close, I might be disposed to recommend a reversal upon the ground of such ruling and exception, but do not so regard it.

I observe, however, that the learned trial justice in his charge committed what appears to me to have been a capital error in his instruction upon the subject of defendants' defense of alibi, which was the main defense attempted in their behalf. The evidence for the defense upon that subject was very fairly summarized by the justice in his charge, and tended very strongly, if credited, to show that at the time when the crime was committed both defendants were some considerable distance away from the scene of its commission, although within the same city, that is, the Greater New York. It tended to show that they were at that time at a certain restaurant on Fourteenth street, Manhattan, taking supper, while the pocket-picking alleged as the crime took place at the Brooklyn end of the Williamsburg bridge. In his main charge the justice instructed the jury properly as to the general doctrine that the burden of proof rested upon the prosecution to establish beyond a reasonable doubt the existence of every fact essential to constitute the commission of the crime, although his comparison that the conviction upon which one may act in a matter of importance in his own affairs, as being a fair test of reasonable doubt, was to my mind inaccurate and unfortunate and possibly misleading. No doubt every reasonable person at times comes to a conclusion in his own affairs and acts upon such conclusion when he still holds a reasonable doubt of the correctness thereof, and he acts upon it because he must act one way or the other, and, therefore, he acts upon the balance of the probabilities. The evidence of the prosecution here was to the effect that the complainant

recognized the defendants as two of the men whom he saw pressing upon and about him at the time when he soon discovered his pocket had been picked. Therefore, of course, the People's case rested for one essential element of the commission of the crime upon the fact of the actual presence of the defendants at the scene of that act — the picking of the complainant's pocket. Hence, of course, under that general rule so given by the justice, in order to convict the jury must have found that the fact of such presence was established beyond a reasonable doubt. Nevertheless, in charging upon the subject of the defense of alibi, the learned justice in his main charge said: " In regard to the proof of an alibi, unless you are satisfied that the defendants could not have been at the place where the crime was alleged to have taken place at the time it is alleged to have taken place, then you cannot say that the alibi is sustained." At the end of the charge counsel for the defendants expressed his approval of the charge generally except that he asked the court to charge the jury, " on the question of this alibi defense, if the jury have a reasonable doubt as to whether the alibi defense has been established or not, they must acquit the defendants." To this request the learned justice responded, " I do not understand that is the law," and the counsel replied, " I understand it is." Then the justice added: " Of course, as I said before, if these men were not over at the Williamsburg bridge and did not steal this money they must be acquitted, but on the mere question of alibi itself, and nothing else, I think the jury must be satisfied that the defendants *could not have been* at the place where the crime is alleged to have been committed." (Italics mine.) Somewhat strange to say, in view of the obvious care with which such counsel tried the case, he did not except to such statement by the court.

The gist of the charge upon that subject, both in the main part and in dealing with the said request, was that the jury should not acquit by reason of the alibi evidence unless it

established " that the defendants could not have been at the
place where the crime is alleged to have been committed " at the
time when it was committed.   To my mind that instruction, up-
on what was perhaps the most important question in the case as
it was tried, was fundamentally wrong for two reasons, viz.:
(a) Because its natural tendency was to make the jury under-
stand that upon the question of defendants' such presence it was
unnecessary, in order to convict, that upon the whole evidence
they find the fact of such presence established beyond a reason-
able doubt; and (b) because, even upon the mistaken theory
that the burden of proof as to alibi rested upon the defense in
the full affirmative sense, the test thus established was that the
proof must satisfy the jurors beyond all doubt at all, namely,
that defendants " could not have been at the place " where the
crime is alleged to have been committed.   In other words, such
test required the proof to exclude even a bare possibility of
their presence.

The rule as to the burden of proof respecting the defense of
alibi in a criminal case was very clearly and fully stated by
this court in People v. Allocca (183 App. Div. 571).   The
opinion written by the presiding justice upon abundant and
conclusive authority declared that: " The burden of proof as to
the alibi was not upon the defendant.   If the proof as to the
alibi in connection with all of the other proof raised a reasonable
doubt as to the presense of the defendant at the place of the
crime, the defendant was entitled to an acquittal."

The evidence for the prosecution rested chiefly upon the
testimony of the complainant that two days after the com-
mission of the crime he met the defendants walking along a
street in East New York and recognized them at once as two of
the three men who had so pressed upon him.   He had never
seen either of them before the occasion of the commission of the
crime.   While, of course, his such subsequent recognition and
identification of them is entirely possible, yet it does not con-

stitute anything like absolute proof. It is quite possible that he may have been innocently mistaken about it.

Counsel for the respondent upon the reargument contended that the charge should be viewed as a whole and the phrases criticized above by me regarded as controlled and modified by the general statements of the charge that the burden of proof was upon the People to establish defendants' guilt beyond a reasonable doubt. I do not think we can fairly so conclude. The specific instruction as to the defense of alibi, which was evidently defendants' main reliance, must be held to prevail over the general expressions. Moreover, the final statement of the charge upon the subject was unequivocal, viz.: " I think the jury must be satisfied that the defendants could not have been at the place where the crime is alleged to have been committed." In short, that matter was left to the jury upon the instruction that they could not acquit because of the evidence to establish an alibi unless it satisfied them that defendants could not possibly have been at the place where the crime is alleged to have been committed, at the time when it was committed. That test demanded that defendants prove their such defense not merely beyond a reasonable doubt, but beyond any doubt whatever. It is difficult to conceive of any instruction in a criminal case more fundamentally erroneous or more prejudicial to a defendant.

Counsel for respondent also called our attention to the fact that in the main charge, after the quoted instruction as to the test of alibi proof, the learned trial court added: " But do not misunderstand me to say you can find them guilty just from that fact, because you cannot; you can only find them guilty if you find on the proof that they did, in fact, commit this pocket picking on that afternoon." That qualification meant no more than if the proof as to alibi failed to satisfy the test just given, still the jury could not convict simply because of

such failure, but only in case the evidence as a whole established defendants' guilt.

Under all the circumstances I think that the interests of justice require that the appellant should have a new trial at which the correct rule as to the defense of alibi and the consideration of the evidence in support thereof may be given to the jury.

I advise, therefore, that the judgment of conviction be reversed as to the appellant, and a new trial be granted.

JENKS, P. J., BLACKMAR, KELLY and JAYCOX, JJ., concurred.

Judgment of conviction reversed on reargument as to the appellant, and a new trial granted.