In the Matter of GEORGE NOLAN et al., Appellants, *v.* COURT OF GENERAL SESSIONS OF THE COUNTY OF NEW YORK et al., Respondents.

First Department, December 14, 1961.

*Victor J. Herwitz* (*Frederic A. Johnson* with him on the brief), for appellants.

*Daniel J. Sullivan* of counsel (*H. Richard Uviller* with him on the brief; *Frank S. Hogan, District Attorney*), for respondents.

EAGER, J. The petitioners appeal from an order of Special Term dismissing their petition herein. The proceeding is in the nature of a prohibition proceeding under article 78 of the Civil Practice Act to prohibit and restrain the Court of General Sessions of the County of New York and the District Attorney of said county from proceeding with a retrial of the petitioners upon an indictment charging them with the crime of attempted burglary in the third degree. The position of the petitioners is that, under the special circumstances here, a retrial would constitute double jeopardy and, thus, would be in violation of their common-law and constitutional rights.

The order to show cause instituting this proceeding was made returnable at a Special Term of this court, and Special Term rendered the order appealed from. This procedure was in error in that, pursuant to the provisions of the statute, the application herein for an order directed against the Court of General Sessions should have been made to the Appellate Division. (Civ. Prac. Act, § 1287.) The failure, however, of the parties to proceed as directed by statute is immaterial now, in that, by virtue of the appeal, the matter is now before this court and the parties have submitted the matter to it upon the merits. Under

the circumstances, we may dispose of the proceeding as if it had been made returnable here in the first instance.

Special Term dismissed the proceeding upon the ground that it was not properly maintainable in that the " petitioners have had, and still have, readily available legal means of redress by way of motion and appeal ". (28 Misc 2d 936, 937.) We have recently held, however, that the article 78 (Civ. Prac. Act) remedy is available under the circumstances here. (*Matter of Mack* v. *Court of General Sessions*, 14 A D 2d 98, 101; see, also, *Matter of McCabe* v. *County Court*, 24 Misc 2d 472.) Accordingly, we will dispose of the matter on the merits.

By indictment, dated March 4, 1959, the petitioners were charged with the crimes of attempted burglary in the third degree and attempted grand larceny in the first degree. Following a lengthy jury trial thereon in the Court of General Sessions, the court dismissed the attempted grand larceny count and the jury disagreed on the attempted burglary charge.

Thereafter, upon the case being reached for retrial, the parties agreed to request a trial by the Court of General Sessions without a jury, with a determination to be made by the Trial Judge solely on the basis of the prior trial record. Thereupon, and on March 25, 1960, the Assistant District Attorney, counsel for the defendants and the defendants, appeared in Part IX of the Court of General Sessions, Judge SCHWEITZER presiding, and announced that they were ready for trial. At that time, a stipulation, signed by the defendants and their counsel was filed with the court, whereby it was agreed that the defendants did waive a trial by jury and consented to be tried by Judge SCHWEITZER " sitting as the Court without a jury "; that the defendants did waive further confrontation of witnesses; that all the witnesses who testified at the prior trial if recalled to testify before Judge SCHWEITZER would testify in the same manner, and that Judge SCHWEITZER should determine the credibility of the witnesses upon the record. It was further stipulated that Judge SCHWEITZER was to consider motions to dismiss the indictment, and that upon denial of such motions he might in his final determination render a judgment of " (a) not guilty, (b) guilty of attempted burglary in the third degree, (or) (c) guilty of unlawful entry." The defendants in open court did each state that they heard the reading of the stipulation, that they understood the same, and that they agreed to it. The People offered and there was received in evidence the record of the former trial, and the court stated, " For the record, a determination will be made in conformance with the stipulation on file. I now reserve decision."

On November 18, 1960, the case was again called in General Sessions, Judge Schweitzer presiding. The defendants and their counsel were present. After a Bench conference Judge Schweitzer stated that: " Now, in this case a stipulation was executed * * * wherein it was agreed that the Court would make a determination of innocence or guilt predicated upon the record of a prior trial which ultimately resulted in a disagreement. Since the receipt of this stipulation and upon further reflection, I question the legal propriety of a Court making a determination solely on a record and without confrontation of witnesses, and on my own motion I vacate the stipulation and I ask the District Attorney to set this case down for trial."

Defense counsel objected and offered to take whatever steps the court desired necessary to avoid any question arising with respect to defendants' right of confrontation, including the giving of permission to the court to call all witnesses who had testified at the prior trial. The court, however, rejected this suggestion.

The matter was set down for trial on December 2, 1960 and defense counsel then appearing, again objected to the court's " action in declaring a mistrial and in directing that it be set down for trial, and that the stipulation that was entered into by implication need not be adhered to." Defendants' counsel then indicated their intention to raise the question of double jeopardy.

The People raise no question about the validity of the stipulation for the retrial of the defendants by Judge Schweitzer in a Court of General Sessions without a jury. We will accept, as conceded by the Assistant District Attorney on the argument, that the defendants had the power and did effectively waive a jury trial (see *People* v. *Carroll,* 3 N Y 2d 686; *People* v. *Diaz,* 10 A D 2d 80, affd. 8 N Y 2d 1061) and any further right of confrontation with the witnesses (see *Matter of United Press Assns.* v. *Valente,* 308 N. Y. 71, 82; *People* v. *Sugarman,* 248 N. Y. 255, 258; *Diaz* v. *United States,* 223 U. S. 442, 451), and that Judge Schweitzer had the power to try the petitioners upon the record of the former trial and render a judgment thereon. The position of the People is that, so assuming, nevertheless, the defendants " had not been placed in jeopardy "; and that, even if they had been, the action of Judge Schweitzer, in vacating the stipulation and setting the case down for a formal retrial was simply the equivalent of a proper granting of a " mistrial ".

In any discussion with respect to the plea of double jeopardy, it is well to bear in mind that the doctrine that a person shall not be twice put in jeopardy for the same offense was a fundamental principle of the common law and now also exists as a

right guaranteed by the Federal and State Constitutions. (*People ex rel. Stabile* v. *Warden of City Prison*, 202 N. Y. 138, 150; U. S. Const., 5th Amdt.; N. Y. Const., art. I, § 6.) Further, that " [t]he prohibition is not against being twice punished, but against being twice put in jeopardy ". (*United States* v. *Ball*, 163 U. S. 662, 669.) The guarantee " is that a person shall not be subject to the risk of a second trial " (*Matter of McCabe* v. *County Court*, 24 Misc 2d 472, 476, *supra*).

Concededly, here, as in every case where the plea of double jeopardy is presented, the plea is sustainable only upon it appearing that the defendants were subjected to " jeopardy " on a prior occasion. Unless there was former jeopardy, there can be no double jeopardy. But it is not always easy to determine whether or not the prior proceedings against a defendant were such that jeopardy did attach. (See 22 C. J. S., Criminal Law, § 241.) It is clear, however, that the determination of whether or not there was former jeopardy in a particular case should be made in view of the purpose of the doctrine. We are to bear in mind that " [t]he defense of former jeopardy is designed to protect the citizen from vexations and successive prosecutions for the same offense." (*People* v. *Ercole*, 4 N. Y. 2d 617, 621; see, also, *Green* v. *United States*, 355 U. S. 184.) Thus, when a defendant is brought to trial and the trial reaches a point where in all fairness to him it should be carried on to a conclusion, the defendant should be considered as having been placed in jeopardy. So, it is settled that a defendant on trial is placed in jeopardy when the trial court is fully organized and evidence is given against the defendant. " The general rule in this state is that if the court has jurisdiction and all prior proceedings are valid, a prisoner is placed in jeopardy when he has been arraigned and pleaded to a valid charge, a jury has been examined and sworn, and evidence given [citing cases] ". (*People ex rel. Meyer* v. *Warden*, 269 N. Y. 426, 428.)

Here, the defendants, after having pleaded, appeared for trial in a Court of General Sessions, the trial proceeded by the offering and receipt as an exhibit of their stipulation for a trial by the court without a jury; and thereupon evidence was given and received by the Trial Judge, namely, the record of the former trial was offered and marked as an exhibit in evidence. Thus, within the contemplation of the aforesaid general rule, the defendants here were placed in jeopardy.

Furthermore, in the case of a trial before a court sitting without a jury, a test of former jeopardy which may be safely applied " is whether a defendant has actually been on trial and whether the court has a right to finally determine the issue and fix the

punishment." (See *People ex rel. Cohen* v. *Collins,* 238 App. Div. 592, 595; see, also, *People* v. *Goldfarb,* 152 App. Div. 870, affd. 213 N. Y. 664; *People* v. *Lem,* 11 Misc 2d 35.) The defendant is actually placed in jeopardy where the trial reaches a point when he is in danger of having a valid judgment pronounced against him. (22 C. J. S., Criminal Law, § 241, p. 639; *People ex rel. Meyer* v. *Warden, supra,* p. 429.) Here, such point had been reached. Judge SCHWEITZER, sitting as a court, without a jury, was empowered to finally determine the issues and render judgment. There was a complete submission of the indictment to him for his disposition as a court sitting without a jury. He reserved decision. True, he had agreed to hear arguments and to take briefs but these were matters merely in aid of the exercise of judicial decision. From the time of the submission and reservation of decision, the fate of the defendants was with the Trial Judge. It was not until some six months later that he determined that he would not perform the duties undertaken by him.

Generally speaking, when jeopardy has once attached, for however short a time, the trial must proceed and be prosecuted to a legal determination. (1 Wharton, Criminal Law and Procedure, § 136, p. 304.) Because, however, the guarantee against double jeopardy is designed to and is to be applied to further the accomplishment of justice (see *People* v. *Ercole,* 4 N Y 2d 617, *supra*), the termination of a trial, once started, before a verdict or decision does not always bar a retrial. Occasions will and do arise during a trial when the court, in the exercise of discretion and in the interests of justice, is entitled to terminate a trial or declare a mistrial and thereupon order a new trial (see *People ex rel. Stabile* v. *Warden of City Prison,* 202 N. Y. 138, 151, *supra*; *People ex rel. Lehman* v. *Moorehead,* 248 App. Div. 826, affd. 272 N. Y. 531; *People* v. *Montlake,* 184 App. Div. 578). But to justify the exercise of the power to declare a mistrial, the reason for it must be very cogent, or as some courts have said, there must be present a " manifest necessity " for the same in the interests of justice (see decisions, *infra*). " [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes " (*United States* v. *Perez,* 9 Wheat. [22 U. S.] 579, 580).

In the words of the decisions, a mistrial with a direction of a new trial is justified where " unforseeable circumstances * * * arise during a trial making its completion impossible " (*Wade* v. *Hunter,* 336 U. S. 684, 689); where there is " manifest necessity for the act, or ends of public justice would otherwise be defeated." (*United States* v. *Perez, supra,* p. 580; also *Wade* v. *Hunter, supra*; *People* v. *Colon,* 18 Misc 2d 1061; *People ex rel.*

*Wright* v. *Klein,* 139 Misc. 353) ; and where " for reasons deemed compelling by the trial judge * * * the ends of substantial justice cannot be attained without discontinuing the trial " (*Gori* v. *United States,* 367 U. S. 364, 368).

It is clear, however, that there were here no " unforseeable circumstances ", " manifest necessity ", or requirement in " the ends of substantial justice " justifying Judge SCHWEITZER's refusal to render a decision and his direction of a retrial. His position was merely that he questioned " the legal propriety of a Court making a determination solely on the record " as submitted to him. This, notwithstanding neither the People nor the defendants were questioning the propriety of the proceedings or his jurisdiction.

This is not the case where the mistrial was precipitated by acts of the defendant or his counsel. Nor is it the case where a new trial became necessary because of motions made or proceedings taken by the defendant. The defendants here were insisting upon the continuance of the trial and the disposition of the matter by the trial court.

We think the decision in *People ex rel. Stabile* v. *Warden* (202 N. Y. 138, *supra*) is sufficiently in point to be decisive. There, the defendant was placed on trial under an indictment which charged him with the crime of murder. The Trial Judge, after the case had been submitted to the jury and while they were in the midst of their deliberations, summoned the jury into court and asked the jury if they had agreed upon a verdict, to which the foreman replied, " Not as yet ". Thereupon, without consultation with defendant or his counsel the Judge discharged the jury. There, as here, there was a final submission of the issues of fact for determination. There, as here, there was a termination of the trial without consent on the part of the defense. It was held there that the action of the trial court was arbitrary and not justifiable, and that, therefore, the defendant could not again be placed on trial. The same result should follow here where the Trial Judge, to whom the case was submitted for determination, refused to proceed to a determination of the issues notwithstanding all parties and counsel insisted that he so proceed.

True, it is important to the People of the State of New York that final judgment be passed on the guilt or innocence of the defendants in a criminal case. But we believe it is far more important that the constitutional guarantees of defendants be preserved inviolate. The fact that the adherence to the constitutional provision in a particular case may frustrate the rights of the People to a conviction is immaterial. " That provision

of the Constitution is fundamental and all courts of the State must be governed by it not only in form but in spirit even though the result is to release one legally indicted '' for a serious crime (*People ex rel. Meyer* v. *Warden,* 269 N. Y. 426, 428, *supra*).

The order of March 14, 1961, should be vacated and reversed upon the law and the facts, without costs, and final order should be directed in favor of the petitioners prohibiting and restraining the Court of General Sessions of the County of New York and the Judges thereof and Honorable Frank S. Hogan, the District Attorney of New York County, from retrying the petitioners upon Indictment No. 838, and from taking any future steps in connection with the said indictment, and directing the discharge of the defendants insofar as they are held under and pursuant to said indictment.

STEUER, J. (dissenting). We agree with the opinion of the majority insofar as it finds the procedure undertaken by appellants to have been proper. We disagree on the substantive question presented and believe that the writ should not have been sustained and would therefore affirm the determination of the court below.

The facts are as stated in the majority opinion., The question is whether the defendants in the criminal action, petitioners here, will be subjected to double jeopardy if put to trial on the indictment. The constitutional guarantee is that '' No person shall be subject to be twice put in jeopardy for the same offense '' (N. Y. Const., art. I, § 6). As in the case of many such guarantees of our liberties, there are semantic difficulties in the way of a clear expression and the extent of the protection intended to be afforded can only be measured by the infraction against which it is set up as a safeguard. That purpose is stated to be to prevent '' vexations and successive prosecutions for the same offense '' (*People* v. *Ercole,* 4 N Y 2d 617, 621). And while the prohibition to effect it has been said to be not a prohibition of being twice punished but '' against being twice put in jeopardy '' (*United States* v. *Ball,* 163 U. S. 662, 669), it is universally recognized that there are many exceptions.

Thus the rule has been formulated that a defendant is put in jeopardy after being arraigned and pleading to a valid charge, a jury having been sworn, and evidence presented against him (*People ex rel. Meyer* v. *Warden,* 269 N. Y. 426). Yet there are many situations where all of this has taken place and it is now incontestably recognized that the constitutional provision has not been violated, as, for example, where the defendant requests a mistrial (*People ex rel. Creasey* v. *Jackson,* 3 A D 2d 797,

motion for leave to appeal denied 3 N Y 2d 774); where a code-fendant requests a mistrial even though the defendant does not join in the request (*People ex rel. Lehman* v. *Moorehead,* 248 App. Div. 826, affd. 272 N. Y. 531); where there has been misconduct on the part of the jury (*People ex rel. Herbert* v. *Hanley,* 142 App. Div. 421); where illness of a court official interrupts the trial (*People ex rel. Epting* v. *De Voe,* 284 App. Div. 1092, affd. 309 N. Y. 818); where physical or mental illness of the defendant arises during the trial (*People ex rel. Jimerson* v. *Freiberg,* 137 Misc. 314; *People* v. *Zendano,* 31 Misc 2d 145) and in many other situations. Likewise, there are exceptions promulgated by statute — where a prior judgment is reversed (Code Crim. Pro., § 544) or where an acquittal is not on the merits (Code Crim Pro., § 340). In all of these situations the defendant has been actually in jeopardy as, had the trial gone to its conclusion, he could have been convicted. Yet in none of them was it held that the constitutional provision prevented a further presentation.

It is not therefore the technical presentation of a part of the case to the trier of the facts, be it court or jury, which is controlling. It is whether the jeopardy so involved constituted a vexatious interference with his rights. If the failure to complete the first presentation is due either to error in the proceedings, an accident or an untoward incident, or an effort to protect other rights of the defendant, a second trial may be had. These exceptions stem from the necessities of justice (*Wade* v. *Hunter,* 336 U. S. 684). In other words, the circumstances are looked to and, absent persecution by successive charges of the same offense or deliberate attempt to harass, the public interest in fair trials takes precedence.

Where the failure to complete the trial is the result of a ruling designed to protect the defendant and insure him against an unfair procedure, he is hardly in a position to complain. The scrupulous niceties of modern criminal trial practice often present difficult questions as to how far the court should go of its own motion in declaring the proceedings had a nullity and directing a new trial. It has been authoritatively held that, even where the court has erred in this respect in that the rights of the defendant have not in fact been violated by the proceedings had at the trial, in following through the error by declaring a mistrial a second trial is not thereby proscribed (*Gori* v. *United States,* 367 U .S. 364). When the judge so acts in good faith, a second trial following the mistrial improvidently ordered is not barred.

Generally the question is not governed by the minutiae of procedure but by whether the purpose of the guarantee is contravened by a second trial. We are dealing with a protection of constitutional rights, not maintaining a shibboleth in its pristine glory. Under this test no real question is here presented. Even under a narrower view, the decision below must be supported as coming within exceptions to the meaning of the constitutional provision as specifically held.

BREITEL, J. P., and STEVENS, J., concur with EAGER, J.; STEUER, J., dissents in opinion in which McNALLY, J., concurs.

Order entered on March 14, 1961 vacated and reversed upon the law and the facts, without costs, and final order is directed in favor of the petitioners prohibiting and restraining the Court of General Sessions of the County of New York and the Judges thereof and Honorable Frank S. Hogan, the District Attorney of New York County, from retrying the petitioners upon Indictment No. 838, and from taking any future steps in connection with the said indictment, and directing the discharge of the defendants insofar as they are held under and pursuant to said indictment. Settle order on notice.